IN THE SUPREME COURT OF THE STATE OF DELAWARE

WALTER A. WINSHALL, in his §
capacity as the Stockholders' §    No. 520, 2019
Representative for former Harmonix §
Stockholders, §
§    Court Below: Superior Court
§    of the State of Delaware
Plaintiff Below, §
Appellant, §    C.A. No. N15C-06-137
§
v. §
§
VIACOM INTERNATIONAL, INC., §
a Delaware Corporation, §
§
Defendant Below, §
Appellee. §

Submitted: May 20, 2020
Decided: July 6, 2020

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

**O R D E R**

Upon consideration of the parties' briefs and the record of the case, it appears that:

(1) Viacom International, Inc. (Viacom) acquired Harmonix Music Systems, Inc. (Harmonix) pursuant to a merger agreement dated September 20, 2006. Harmonix was a video game company with successful video games such as Guitar Hero and Rock Band. The merger consideration payable to the Harmonix stockholders consisted of an initial consideration of $175 million payable at closing

and two post-closing payments, a 2007 Earn-Out Payment and a 2008 Earn-Out Payment.[1] The Earn-Out Payments were to be calculated based on the commercial success of the Harmonix video games which Viacom acquired. The appellant, Walter A. Winshall, is the stockholders' representative for the former Harmonix stockholders. The position of stockholders' representative was created in the merger agreement. The agreement provided for a detailed procedure to resolve any disputes about the amounts of the 2007 and 2008 Earn-Out Payments. The procedure included the use of Resolution Accountants who were empowered to resolve any such disputes.

(2) Disputes about the 2007 and 2008 Earn-Out Payments did arise and significant litigation ensued. The litigation included three civil actions in the Court of Chancery, appeals to this Court in two of those cases, and a civil action in the Superior Court which is the subject of the appeal now before us. A detailed statement of the procedural history of these cases is not necessary. The result of it all was that the former Harmonix stockholders prevailed and were adjudged to be entitled to $234,130,148 for the 2007 Earn-Out Payment and $298,813,905 for the 2008 Earn-Out Payment. Viacom made payment in full of the 2007 Earn-Out

---

[1] The Harmonix stockholders are referred to in the merger agreement as "Merger Consideration Recipients." The Merger Consideration Recipients also included persons who held warrants and options on Harmonix stock and joined the merger agreement with the plaintiff as their representative. The Merger Consideration Recipients will simply be referred to herein as the former Harmonix stockholders.

2

Payment in June 2012 and payment in full of the 2008 Earn-Out Payment in August 2013, both with pre-judgment interest.

(3) Winshall commenced this Superior Court action on June 14, 2015. The complaint contains four counts. Count I seeks indemnification pursuant to an indemnification clause contained in the merger agreement. The damages sought under Count I include attorneys' fees and costs arising from the various litigation proceedings between Winshall and Viacom, and alleged tax losses. The theory of the tax losses is that Viacom wrongfully delayed payment of the 2007 and 2008 Earn-Out Payments, causing the former Harmonix stockholders to incur increased income taxes due to expiration of the Bush tax cuts. Count II seeks damages for breach of the merger agreement related to the Earn-Out Payments. Count III alleges that Viacom breached the implied covenant of good faith and fair dealing. Count IV asserts a claim against Viacom for malicious prosecution.

(4) In response to cross-motions for summary judgment, the Superior Court ruled that the claims for damages under Count I are barred by *res judicata* and the statute of limitations, except for the claim for attorneys' fees and costs. The court ruled that Counts II and III are barred by *res judicata* and the statute of limitations. It ruled that Count IV fails to state a claim upon which relief can be granted. Viacom filed a motion for reargument. In the proceedings on that motion, the court reconsidered its ruling that Winshall could proceed with the claim for

3

indemnification for attorneys' fee and costs under Count I. The court then ruled that all of the former claims under Count I, including the claim for attorneys' fees and costs, fail because the indemnification clause in issue applies only to indemnification for third-party claims, not direct claims between the parties to the merger agreement.

(5) On appeal, Winshall asserts three claims. First, he claims the contention that the indemnification clause applies only to third-party claims was raised for the first time on reargument and new issues may not be raised in a motion for reargument. Next, he claims that the plain language of the merger agreement entitles the selling stockholders to indemnity for their adverse tax consequences and attorneys' fees and costs. Finally, he claims that the selling stockholders claim for indemnification for tax consequences is not time-barred.

(6) One of the arguments that Viacom makes in response to Winshall's claims, and the one which we believe is dispositive, is an argument that Winshall's claim for attorneys' fees, costs and tax losses is barred by a limitation on indemnification contained in the merger agreement.[2]

(7) The merger agreement contains two indemnification clauses. In one, the former Harmonix stockholders agreed to indemnify Viacom for all losses arising out of or by reason of the breach of any representation, warranty, covenant or agreement

---

[2] "[T]his Court may affirm on the basis of a different rationale than that which was articulated by the trial court." *Unitrin, Inc. v. American General Corp.*, 651 A.2d 1361, 1390 (Del. 1995).

made by Harmonix.[3]  The stockholders' indemnification obligation, however, is subject to "Certain Limitations."[4]  One limitation is that Viacom was limited to obtaining indemnification only from an Escrow Amount held back from the initial consideration for that purpose and by set-offs against the 2007 and 2008 Earn–Out Payments.[5]  Under the agreement, once the Escrow Amount was exhausted or released to the former Harmonix stockholders and the 2007 and 2008 Earn-Out Payments were paid in full, the former Harmonix stockholders had no further indemnification obligation to Viacom.

(8)  The second indemnification provision, the one relevant to this case, obligates Viacom to indemnify the former Harmonix stockholders for losses arising out of or by reason of the breach of any representation, warranty, covenant or agreement made by it.[6]  Viacom's obligation to indemnify the former Harmonix stockholders, however, is also subject to Certain Limitations, which are set forth in Section 8.6(b):

> Certain Limitations.  [Viacom] shall not be obligated to indemnify [the former Harmonix stockholders] pursuant to Section 8.6(a) to the extent the aggregate amount of all indemnifiable Losses  exceeds the aggregate unpaid amount of the Merger Consideration then payable.

---

[3] Section 8.2(a).
[4] Section 8.2(c).
[5] The Escrow Amount also served other purposes.
[6] Section 8.6(a).

(9) When Viacom paid the 2008 Earn-Out Payment in August 2013, with prejudgment interest, it completed payment of the merger consideration in full. After that payment was made, there was not, and after that could not be, "an unpaid amount of the Merger Consideration then payable." The effect of this unambiguous limitation on Viacom's indemnification obligation was to reduce that obligation to zero once the merger consideration was paid in full. Since the merger consideration was paid in full before Winshall brought the present action for indemnification, the claim for indemnification must fail.

(10) It is not necessary for us to address how Section 8.6(b) might have operated against a claim for indemnification made during the period between closing and final payment in full of the merger consideration. It is clear, however, that when payment in full of the merger consideration was completed, Viacom's indemnification obligation came to an end.

NOW, THEREFORE, IT IS THE ORDER of the Court that the Judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/  James T. Vaughn, Jr.
Justice

6